# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WENDY ABRAMS,<br><br>*Plaintiff,*<br><br>v.<br><br>ROBERT M. CALDERONI, SARA C. ANDREWS, STEVEN J. BENSON, ITA BRENNAN, MICHAEL J. CHRISTENSON, EDWIN J. GILLIS, DAVID J. HENSHALL, PETER J. SACRIPANTI, WILLIAM R. WAGNER, and LOGMEIN, INC.,<br><br>*Defendants.* | Case No.: 1:20-cv-10272<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Wendy Abrams ("Plaintiff"), by her undersigned attorneys, alleges upon information and belief, except for her own acts, which are alleged on knowledge, as follows:

## INTRODUCTION

1. Plaintiff brings this action against LogMeIn, Inc. ("LogMeIn" or the "Company") and the Company's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a). Specifically, Defendants solicit stockholder approval in connection with the proposed acquisition of the Company by affiliates of Francisco Partners, a technology-focused global private equity firm, and Evergreen Coast Capital Corporation ("Evergreen"), the private equity affiliate of Elliott Management Corporation ("Elliott" and together with Evergreen, the "Buyer"), through a proxy statement filed with the U.S.

1

Securities and Exchange Commission (the "SEC"), that omits material facts necessary to make the statements therein not false or misleading.

2. On December 17, 2019, LogMeIn issued a press release announcing that it had entered into a definitive agreement (the "Merger Agreement"), by which LogMeIn's stockholders will receive $86.05 per share in cash for each share of common stock they own ("Proposed Transaction").

3. On January 17, 2020, defendants issued materially incomplete and misleading disclosures in a Preliminary Proxy Statement (the "Preliminary Proxy Statement") filed with the SEC in connection with the Proposed Transaction. Specifically, the Preliminary Proxy Statement is materially deficient and misleading because, *inter alia*, it contains materially incomplete and misleading information concerning the Company's financial projections and the financial analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Qatalyst Partners LP ("Qatalyst") and J.P. Morgan Securities LLC ("J.P. Morgan"). The omission of such material information constitutes a violation of §§ 14(a) and 20(a) of the Exchange Act, as stockholders need such information in order to cast a properly informed vote on the Proposed Transaction.

4. On February 7, 2020, Defendants authorized the filing of a Definitive Proxy Statement (the "Proxy Statement" or "Proxy") with the United States Securities & Exchange Commission. The Proxy is materially deficient and misleading because, inter alia, it fails to disclose the material information regarding the financial analysis performed by the Company's financial advisors identified above.

5. Without additional information the Proxy is materially misleading in violation of federal securities laws.

6. By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

7. The stockholder vote to approve the Proposed Transaction is currently scheduled for March 12, 2020 (the "Stockholder Vote"). Under the Merger Agreement, following a successful Stockholder Vote, the Proposed Transaction will be consummated.

8. For these reasons, as set forth in detail herein, the Individual Defendants, and the Company, have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under Section 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78n(a) and 78t(a). The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

10. The Court has personal jurisdiction over each of the Defendants because LogMeIn is headquartered in this District, and each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11. Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. § 1391, because LogMeIn is headquartered in this District, and

Defendants have received substantial compensation by doing business in this District via LogMeIn.

**PARTIES**

12. Plaintiff is, and has been at all relevant times, the owner of shares of LogMeIn common stock.

13. Defendant Robert M. Calderoni ("Calderoni") is Chairman of the Board of the Company and has served as a director of the Company since 2017.

14. Defendant Sara C. Andrews ("Andrews") has served as a director of the company since 2018.

15. Defendant Steven J. Benson ("Benson") has served as a director of the company since 2004.

16. Defendant Ita Brennan ("Brennan") has served as a director of the company since 2018.

17. Defendant Michael J. Christenson ("Christenson") has served as a director of the company since 2010.

18. Defendant Edwin J. Gillis ("Gillis") has served as a director of the company since 2007.

19. Defendant David J. Henshall ("Henshall") has served as a director of the company since 2017.

20. Defendant Peter J. Sacripanti (Sacripanti") has served as a director of the company since 2017.

21. Defendant William R. Wagner ("Wagner") is President & Chief Executive Officer and has served as a director of the company since 2015.

22. Defendants Calderoni, Andrews, Benson, Brennan, Christenson, Gillis, Henshall, Sacripanti, and Wagner are collectively referred to as "Individual Defendants" and/or the "Board."

23. Defendant LogMeIn, Inc., a Delaware corporation, is a leading provider of unified communications and collaboration, identity and access management, and customer engagement and support solutions. LogMeIn simplifies how people connect with each other and the world around them to drive meaningful interactions, deepen relationships, and create better outcomes for individuals and businesses. LogMeIn has millions of customers spanning virtually every country across the globe. LogMeIn is headquartered in Boston, Massachusetts with additional locations in North America, South America, Europe, Asia and Australia. The Company's common stock is listed on under the symbol "LOGM" on the NASDAQ Global Select Market. The Company maintains its principal executive offices at 320 Summer Street, Boston, MA 02210.

24. The Individual Defendants and LogMeIn are collectively referred to as "Defendants."

## FURTHER SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

25. LogMeIn is a leading provider of unified communications and collaboration, identity and access management, and customer engagement and support solutions.

26. On December 17, 2019, LogMeIn's Board caused the Company to enter into the Merger Agreement. Pursuant to the terms of the Merger Agreement, LogMeIn's stockholders will receive $86.05 in cash for each share of LogMeIn common stock they own.

27. In a press release dated December 17, 2019, LogMeIn announced that it had entered into a Merger Agreement pursuant to which stockholders of LogMeIn will receive $86.05 per share in an all-cash transaction.

28. The press release states in pertinent part:

BOSTON, Dec. 17, 2019 (GLOBE NEWSWIRE) -- LogMeIn, Inc. (NASDAQ: LOGM), a leading provider of cloud-based connectivity, today announced that it has entered into a definitive agreement (or the "Agreement") to be acquired in a transaction led by affiliates of Francisco Partners, a leading technology-focused global private equity firm, and including Evergreen Coast Capital Corporation ("Evergreen"), the private equity affiliate of Elliott Management Corporation ("Elliott"), for $86.05 per share in cash. The all-cash transaction values LogMeIn at an aggregate equity valuation of approximately $4.3 billion.

Under the terms of the Agreement, LogMeIn shareholders will receive $86.05 in cash for each share of LogMeIn's common stock they hold. This consideration represents a premium of approximately 25% to LogMeIn's unaffected closing stock price on September 18, 2019, the last trading day before a media report was published speculating about a potential sale process. The Board of Directors of LogMeIn approved the Agreement and recommended that shareholders vote in favor of the transaction.

"This transaction acknowledges the significant value of LogMeIn and provides our stockholders with a meaningful and certain cash offer at a compelling premium," said Bill Wagner, President and Chief Executive Officer of LogMeIn. "Together, Francisco Partners and Evergreen are committed to addressing the unique needs of both our core and growth assets. We believe our partnership with Francisco Partners and Evergreen will help put us in a position to deliver the operational benefits needed to achieve sustained growth over the long term."

"LogMeIn has a compelling product portfolio and leadership in the Unified Communications and Collaboration, Identity, and Digital Engagement markets," said Andrew Kowal, Senior Partner at Francisco Partners. "We look forward to working with Bill and the leadership team at LogMeIn to accelerate growth and product investment organically and inorganically."

"This investment builds on the strength of our infrastructure and security software franchise and we are thrilled to partner with the company to achieve its long-term strategic vision," added Dipanjan "DJ" Deb, co-founder and CEO of Francisco Partners.

"We have deep appreciation for the LogMeIn franchise and leadership team from our long-term involvement in the business," said Elliott Partner Jesse Cohn and Portfolio Manager Jason Genrich. "We look forward to partnering with Bill and the entire executive leadership team alongside Francisco Partners on the next phase of growth and value creation for LogMeIn as a private company."

Christine Wang, Principal at Francisco Partners also commented, "We are excited to invest in LogMeIn and support its mission to deliver best-in-class software solutions to the modern workforce."

> The transaction is expected to close in mid-2020, subject to customary closing conditions, including the receipt of stockholder and regulatory approvals.
>
> The definitive agreement for the transaction includes a customary 45-day "go-shop" period which permits LogMeIn and its advisors to actively solicit alternative acquisition proposals, and potentially enter negotiations with other parties that make alternative acquisition proposals. LogMeIn will have the right to terminate the definitive agreement to accept a superior proposal subject to the terms and conditions of the definitive agreement. There can be no assurance that this process will result in a superior proposal, and LogMeIn does not intend to disclose developments with respect to the solicitation process unless and until its Board of Directors makes a determination requiring further disclosure.

**The Proxy Statement Misleads LogMeIn Stockholders by Omitting Material Information**

29.     On February 7, 2020, LogMeIn filed the Proxy Statement with the SEC. As alleged below and elsewhere herein, the Proxy Statement contains material misrepresentations and omissions of fact that must be cured to allow LogMeIn's stockholders to render a properly informed decision with respect to the Proposed Transaction. Designed to convince shareholders to vote in favor of the Proposed Transaction, the Proxy Statement is rendered misleading by the omission of critical information concerning the financial analyses performed by the Company's financial advisors, and other crucial issues. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to LogMeIn's stockholders.

*Material Omissions Concerning the Financial Projections and the Financial Advisor's Financial Analyses:*

30.     With respect to LogMeIn's projected financial information and the description in the Proxy Statement of the Company's financial advisors in connection with the Proposed Transaction, namely Qatalyst Partners and J.P. Morgan, the Proxy Statement fails to provide material information necessary for the Company's stockholders to evaluate both the Company's future as a standalone entity and the valuation analyses performed by the financial advisors.

31.     LogMeIn engaged both Qatalyst and J.P. Morgan to render financial advisory and investment banking services to LogMeIn, including an opinion to the LogMeIn board as to the fairness, from a financial point of view, to the holders of LogMeIn common stock of the Merger Consideration. As the Proxy Statement notes, the financial advisor utilized financial information concerning the respective business and operations of LogMeIn was based on certain internal financial analyses and forecasts prepared by or at the direction of the management of LogMeIn relating to its business.

32.     However, the Proxy Statement fails to disclose all line items used to calculate (a) Gross Profit, (b) Adjusted EBITDA, (c) Adjusted Free Cash Flow, and (d) Unlevered Free Cash Flow, and/or to provide a reconciliation of all non-GAAP to GAAP metrics.

33.     In addition to the material omissions identified above, the description in the Proxy Statement of both Qatalyst's and J.P. Morgan's fairness opinions, and the underlying analyses, omits key inputs and assumptions of LogMeIn underlying these analyses. Without this information, as described below, LogMeIn's public stockholders are being misled as to what weight, if any, to place on the financial advisors' fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to LogMeIn stockholders.

34.     Specifically, with respect to Qatalyst's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the individual inputs and assumptions underlying the range of discount rates of 9.0% to 11.0%; (iii) the terminal value of LogMeIn; (iv) the estimated cash balance of LogMeIn; (v) the estimated debt outstanding of LogMeIn; and (vi) the number of fully diluted shares of LogMeIn common stock outstanding.

35. Similarly, with respect to J.P. Morgan's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) unlevered free cash flow for years 2026 through 2029 and all underlying line items; (iii) J.P. Morgan's basis for applying a perpetual growth rate range between 2.0% and 3.0%; (iv) the terminal asset values; (v) the individual inputs and assumptions underlying the range of discount rates from 7.75% to 8.75%; and (vi) total net debt.

36. With respect to Qatalyst's Selected Companies Analysis, the Proxy fails to disclose: (i) which set of projections Qatalyst relied upon; (ii) net debt, preferred stock, and minority interest, and (iii) why NortonLifeLock Inc.'s cash flow estimated "were not meaningful."

37. With respect to Qatalyst's Selected Transactions Analysis, the Proxy fails to disclose: (i) what comprised the selected financial data compared by Qatalyst in the analysis; (ii) net debt, preferred stock, and minority interest, and (iii) the implied enterprise values for companies observed.

38. With respect to J.P. Morgan's Public Trading Multiples Analysis, the Proxy fails to disclose: (i) what comprised the selected financial data compared by J.P. Morgan in the analysis; (ii) which set of projections J.P. Morgan relied upon; and (iii) net debt, preferred stock, and minority interest.

39. With respect to J.P. Morgan's Selected Transaction Multiple Analysis, the Proxy fails to disclose: (i) which set of projections J.P. Morgan relied upon; (ii) net debt, preferred stock, and minority interest, and (iii) the calculated Firm Value for companies observed.

40. Finally, with respect to the respect to J.P. Morgan's Analyst Price Targets for LogMeIn analysis, the Proxy Statement fails to disclose: (i) the price targets observed by J.P. Morgan in the analysis; and (ii) the sources thereof.

41. When a bankers' endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses are crucial to a fair presentation of the material facts. Furthermore, the disclosure of projected financial information provides stockholders with the best basis to project the future financial performance of a company, and allows stockholders to understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. This information is therefore material and must be disclosed if LogMeIn's stockholders are to make a fully informed decision. The omission of this information renders the statements made concerning the financial advisors' analyses and opinions materially misleading.

42. Without such omitted information, LogMeIn's stockholders cannot evaluate for themselves whether the financial analyses performed by either financial advisor were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omitted information identified above is required in order to ensure that stockholders can evaluate the extent to which the financial advisors' opinions and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

43. The omission of this information renders certain portions of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act including, inter alia, the following section of the Proxy Statement: (i) "*Opinion of Qatalyst Partners*;" (ii) "*Opinion of J.P. Morgan*;" and (iii) "*Certain Financial Projections*."

44. Accordingly, Plaintiff seeks, among other things, the following relief: (i) enjoinment of the Proposed Transaction; or (ii) rescission of the Proposed Transaction if it is consummated and to recover damages resulting from Defendants' misconduct.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

45. Plaintiff repeats and realleges each allegation set forth herein.

46. As detailed herein, Defendants disseminated the false and misleading Proxy Statement specified above, which contained statements which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct earlier statements which had become false or misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

47. By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of LogMeIn.

48. By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by Defendants. The Proxy Statement misrepresented and omitted material facts, including material information concerning the actual intrinsic value of the Company. Defendants were at least negligent in filing and

disseminating the Proxy Statement with these materially false and misleading statements and omissions. Defendants have also failed to correct the Proxy Statement and the failure to update and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

49. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of and tender their shares in the Proposed Transaction. A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

51. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of LogMeIn within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and directors of LogMeIn and their participation in and awareness of the Company's business and operations and their intimate knowledge of the materially false statements and omissions contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. Among other things, the Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

55.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered – descriptions which had input from the Individual Defendants.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in Plaintiff's favor and against Defendants as follows:

a) declaring that the Proxy Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b) preliminarily and permanently, enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding

    with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

c) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

d) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

e) granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 12, 2020                                     Respectfully submitted,

| | |
|---|---|
| **LEVI & KORSINSKY, LLP** | **LEVI & KORSINSKY, LLP** |
| Donald J. Enright (to be admitted *pro hac vice*) | |
| Elizabeth K. Tripodi (to be admitted *pro hac vice*) | By: /s/ *Sebastiano Tornatore* |
| 1101 30th Street, N.W., Suite 115 | Sebastiano Tornatore (BBO #686175) |
| Washington, DC 20007 | Shannon L. Hopkins (BBO #435545) |
| Tel.: (202) 524-4290 | 1111 Summer Street, Suite 403 |
| Fax: (202) 333-2121 | Stamford, CT 06905 |
| Email: denright@zlk.com | Tel.: (203) 992-4523 |
|        etripodi@zlk.com | Fax: (202) 333-2121 |
| | Email: stornatore@zlk.com |
| *Attorneys for Plaintiff* |        shopkins@zlk.com |
| | *Attorneys for Plaintiff* |

**CERTIFICATE OF SERVICE**

    I, Sebastiano Tornatore, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on February 12, 2020.

Dated: February 12, 2020                              /s/ *Sebastiano Tornatore*
                                                              Sebastiano Tornatore